MILWAUKEE R. CO. (SECOMBE v.). See Case No. 12,601.

---

## Case No. 9,627a.

### The MIMI.

### ROBERTS et al v. The MIMI.

[6 Adm. Rec. 281.]

District Court, S. D. Florida. March 5, 1859.

SALVAGE — CONSORTS — ACCEPTANCE OF SERVICE — RECONSIDERATION.

[After wrecking vessels have consorted together to save the cargo and materials of a stranded ship filled with water, which are amply sufficient for that purpose, a vessel subsequently arriving is not entitled to come into the consortship, nor are the wreckers or master obliged to accept the services of her steam pump where clearly it could not save the ship. The master may also reconsider his determination to employ the pump.]

[This was a libel in rem by John W. Roberts and others against the cargo and materials of the bark Mimi for salvage.]

Winer Bethel, for libelant.
S. J. Douglas, for respondent.

MARVIN, District Judge. Nine wrecking vessels had arrived at the wreck, and had consorted together to save cargo and materials, when the Eliza Catherine, carrying a steam pump, being the tenth vessel, also arrived, and tendered her assistance. The vessel was at the time full of water, and, according to the master's statement, had filled in about twenty minutes after striking the reef. About fourteen feet of the extreme afterpart of her keel was started off, and turned partially out, and also four or five feet of the garboard streak was torn off. The master of the ship at first consented to take the assistance of the pump, and his determination of this point, according to the views of the wreckers, entitled the Eliza Catherine herself to come into the consortship; and it was accordingly so understood. The master, however, a few moments afterwards, upon examining the bottom of the ship, with a water glass, changed his mind, and determined, that he would not take the assistance of the pump. The wreckers then determined that the Catherine should not come into the consortship; they having vessels and men enough without her to save the cargo and materials.

It is the duty of the wreckers to employ all reasonable means, with the master's consent, to save the ship as well as the cargo; and if there was a reasonable doubt whether the pump, in the present case, would have freed the vessel, if tried, it was their duty to advise the master to try it, and to have assisted at once in getting the pump on board. The employment of the pump would not necessarily let the vessel that carried it into the general consortship; but the pump and vessel would be compensated for the services which the pump actually rendered. In the present case, I do not think that there is room to entertain a reasonable doubt that the ship was so far broken and bilged as that the pump could not have freed the vessel. Consequently there was no obligation on the part of the wreckers either to employ the pump or advise its employment.

Second. The determination of the master to employ the pump being the consideration of the supposed agreement of consortship, a change of his determination caused a failure of the consideration, and avoided the contract.

Third. That, under the circumstances, the Eliza Catherine was rightfully excluded as a salvor from the general consortship.

The following decree was entered:
This bark, laden with cotton from Galveston to Amsterdam, was lost on Pickles reef. Nine wrecking vessels, carrying in all one hundred men, saved a portion of the cargo and materials, valued $41,281. Referring to the libel and answer for the facts of the case: It is ordered, adjudged, and decreed, that the libellants have and recover in full compensation for their services the sum of thirteen thousand four hundred and twenty dollars, in full compensation for their services in saving the said cargo and materials, and that upon the payment thereof, and the costs and expenses of this suit, the wharfage, storage, labor bills, and other charges, the marshal restore said cargo to the master of the said bark, for and on account of whom it may concern; that the said salvage be divided among the salvors by allotting to the first consortship the sum of ten thousand eight hundred and twenty nine dollars, and to the second consortship the sum of two thousand five hundred and ninety one dollars.